Filed 4/30/21  P. v. Thomas CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SEAN THOMAS,<br><br>    Defendant and Appellant. | B302335<br>(Los Angeles County<br> Super. Ct. No. BA281894) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lisa B. Lench, Judge.  Reversed and remanded.

Edward H. Schulman, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and J. Michael Lehmann, Deputy Attorneys General, for Plaintiff and Respondent.

This appeal is from the trial court's summary denial of defendant and appellant Sean Thomas's motion for resentencing under Penal Code section 1170.95.[1]

By amended information in May 2006, appellant and codefendants Wilbur Lawson and Dontae Ray Williams were charged with murder (§ 187, subd. (a), count 1) and robbery (§ 211, count 2).[2] The information also alleged, inter alia, that the murder had been committed during the commission of the robbery (§ 190.2, subd. (a)(17)), that a principal personally used a firearm (§ 12022.53, subds. (b)–(d)), and that appellant had suffered two prior convictions within the meaning of the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d).)

Williams's trial was severed from that of Lawson and appellant. A jury found appellant guilty of first degree felony murder and second degree robbery, and found true the allegation that a principal had been armed with a firearm. Because the jury returned no verdict on the special circumstance allegation, the trial court declared a mistrial as to that allegation. In a bifurcated proceeding, the trial court found that appellant had suffered one prior strike and sentenced appellant to a term of 50 years to life plus one year for murder, and a stayed four-year term for robbery.[3]

In 2019, appellant filed a petition for resentencing under section 1170.95, which provides that persons who were convicted under

---

[1]     Undesignated statutory references are to the Penal Code.

[2]     Neither codefendant is a party to this appeal.

[3]     At the prosecutor's request, the trial court dismissed the allegation that appellant had suffered a conviction constituting a second strike.

theories of felony murder or murder under the natural and probable consequences doctrine, and who could no longer be convicted of murder following the enactment of Senate Bill No. 1437 (S.B. 1437), may petition the sentencing court to vacate the conviction and resentence on any remaining counts. (Stats. 2018, ch. 1015, § 1, subd. (f).) Following the appointment of counsel, briefing by the parties, and a hearing to determine whether appellant had established a prima facie case for relief, the court summarily denied the petition after weighing the facts as set forth in appellant's direct appeal in *People v. Thomas* (Nov. 20, 2008, B200471) [nonpub. opn.] (*Thomas I*).

In this appeal, the parties agree that the trial court committed error when it summarily denied appellant's petition. However, appellant contends that the People should be barred from relitigating his eligibility for resentencing under principles of due process and double jeopardy.

We agree that the trial erred in making factual findings in its summary denial of appellant's petition. We remand the matter with directions to issue an order to show cause and proceed consistent with subdivision (d) of section 1170.95. In light of our conclusion, we do not consider appellant's alternative contentions, which he may choose to assert on remand.

## FACTUAL BACKGROUND[4]

At approximately 6:45 p.m. on February 24, 2005, Brandin Brinkley encountered Lawson outside a 99¢ Store near Vermont and 61st Street. Lawson asked Brinkley where he could purchase gloves. After Brinkley directed him to the 99¢ Store, Brinkley saw Lawson select a pair of black gloves and a pair of red and black gloves inside the store. Brinkley left the store and went home.

Heng Bou testified that he was working in a doughnut store at 60th Street and Vermont on February 24, 2005. Approximately 20 to 30 minutes before he heard sirens and saw an ambulance, Bou saw two young, Black men purchase doughnuts and sit inside the store; the men left before Bou heard sirens.

Guadalupe Rivera testified that around 7:15 p.m. the night of the shooting, she drove to pick up her brother, Osman Alvarado, near a Dollar Warehouse located at Vermont and 60th Street. As she passed by, Rivera saw two men standing outside the store, together with a third man wearing a mask. At least one of the men was wearing a hooded sweatshirt. Rivera parked her car and watched the masked man—the shortest of the three men outside the store—follow Alvarado

---

[4]     We granted defendant's request to take judicial notice of the appellate record in *Thomas I*, and of the appellate record in *People v. Williams et al.* (May 20, 2008, B198076 [nonpub. opn.].) We recite the factual and procedural background from our opinion in *Thomas I*, which "in large measure tracks the facts stated in [*Williams I*]." (*Thomas I*, *supra*, at p. 1, fn. 5.) Appellant did not present any evidence at trial.

4

into the Dollar Warehouse.[5]  Rivera saw the masked man point a gun inside the store while the other men stood outside, watching him through a glass window.  When the two men entered the store, the masked man abruptly left, and Rivera heard gunshots.  After the three men ran away, another man emerged from the store holding his back and said he had been shot.

Alvarado testified that he saw three men standing outside the Dollar Warehouse when he approached the store.  One of the men wore a mask, and the others had hoods over their heads.  While inside the store, Alvarado heard the masked man, accompanied by one of the other men, demand money, and a cashier responded, "Okay."  The third man stood in the store's doorway as a lookout.  When a struggle broke out involving the cashier, one of the men fired a gun, and Alvarado sought cover.  After the three men left, Alvarado saw money on the floor near the store entrance.  Alvarado never saw the robbers' faces, and he was unsure whether the masked man or the other accomplices held the gun.

Los Angeles Police Department officers responded and discovered the victim (Avila Rodriguez) wounded and lying on the ground.  Rodriguez later died of a gunshot wound to his back.  Officers found a gun in front of the store, a pair of gloves 200 feet away from the store, and sales tags for gloves in the doughnut shop's trash bin.  The gun, which belonged to Rodriguez's friend, was kept in the store for Rodriguez's protection.  Appellant's fingerprints were identified on the

---

[5]    Investigating officers later established that Lawson was several inches shorter than appellant and Williams.

sales tags, and his DNA matched DNA collected from one of the recovered gloves.

Investigating officers obtained video surveillance tapes from the 99¢ Store and the Dollar Warehouse, which were played for the jury. Brinkley selected Lawson in a photographic lineup as the person shopping for gloves in the 99¢ Store. When Rivera was shown a photographic lineup, she identified Williams and appellant as the two men with visible faces outside the Dollar Warehouse. Footage of the Dollar Warehouse showed the shooter wearing red gloves, a hooded sweater, and something covering his face. When Williams was arrested on March 6, 2005, he attempted to discard a firearm. A criminalist could not determine whether the discarded gun had fired the bullet recovered from Rodriguez's body.

When Lawson and appellant were interviewed in April 2005, both initially denied being around the area during the robbery and shooting. After appellant learned that police had recovered his DNA from a recovered glove, he stated that he intended to participate in the robbery, but later changed his mind and stood across the street from the Dollar Warehouse while the robbery occurred. When he heard a gunshot, he ran away, and his glove fell off his hand when he jumped over a bush. When Lawson was shown photographs from video surveillance of the 99¢ Store, he admitted that he had purchased the gloves, but stated that he returned to his grandmother's house a half-mile away from the Dollar Warehouse. Lawson stated that he decided not to participate in the robbery because he did not want to get shot.

Lawson denied giving anyone the red gloves, though he could not recall what he had done with them.

## PROCEDURAL BACKGROUND

On January 7, 2019, appellant filed a petition for resentencing pursuant to section 1170.95, claiming entitlement to relief because he was convicted of first degree murder under a felony-murder theory or the natural and probable consequences doctrine. Appellant requested that counsel be appointed on his behalf.

After the court appointed counsel for appellant, the prosecution filed an opposition to the petition, and appellant filed a reply.

At a hearing to determine whether the court should issue an order to show cause, the People argued that despite the jury's inability to reach a verdict on the special circumstance allegation (§ 190.2, subd. (a)(17)), appellant could still be convicted of murder under the current law. Specifically, the People asserted that appellant could be guilty of first degree felony murder as a major participant who acted with reckless indifference to human life, or he could be convicted under a new theory of second degree implied malice murder. In response, appellant argued that any assessment of the evidence with respect to either theory of liability should occur only after the court issued an order to show cause. Following argument, the court found that based on the facts as set forth in our prior opinion, appellant had failed to establish a prima facie case for relief, as he could be convicted of first degree murder "or even potentially second degree murder." The court summarily denied the petition.

Appellant timely filed a notice of appeal.

## DISCUSSION

Appellant contends, and the Attorney General agrees, that the trial court erred by summarily denying appellant's petition. We agree.

1. *Governing Law*

The legislature enacted S.B. 1437 "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); accord, § 189, subd. (e).)

S.B. 1437 also "added a crucial limitation to section 188's definition of malice for purposes of the crime of murder." (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 326 (*Verdugo*), rev. granted, S260493, Mar. 18, 2020.) Under the revised section 188, subdivision (a)(3), "'[m]alice shall not be imputed to a person based solely on his or her participation in a crime.' [Citations.]" (*People v. Lewis* (2020) 43 Cal.App.5th 1128, 1135 (*Lewis*), rev. granted, S260598, Mar. 18, 2020.)

Section 1170.95, as enacted by S.B. 1437, permits individuals who were convicted of felony-murder or murder under the natural and probable consequences doctrine, but who could not be convicted of murder following S.B. 1437's changes to sections 188 and 189, to petition the sentencing court to vacate the conviction and resentence on

8

any remaining counts. (§ 1170.95, subd. (a).) A petition for relief under section 1170.95 must include a declaration by the petitioner that he or she is eligible for relief under section 1170.95 based on all the requirements of subdivision (a), the superior court case number and year of the petitioner's conviction, and a request for appointment of counsel, should petitioner seek appointment. (§ 1170.95, subd. (b)(2).)

If the petition includes the required information, subdivision (c) of section 1170.95, prescribes "a two-step process" for the court to determine if it should issue an order to show cause. (*Verdugo, supra,* 44 Cal.App.5th at p. 327.) The court first "review[s] the petition and determine[s] if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section." (§ 1170.95, subd. (c).) The court then appoints counsel, if requested, and reviews the petition a second time after briefing by the parties to determine if petitioner has established a prima facie case for relief. (*Ibid.*; see *Lewis, supra,* 43 Cal.App.5th at p. 1140.) The petitioner makes a prima facie showing so long as the assertions in his or her petition are not conclusively refuted by facts in the record of conviction as a matter of law. (*Verdugo, supra,* at p. 327; see *People v. Drayton* (2020) 47 Cal.App.5th 965, 968, 980 (*Drayton*); see also *People v. Duchine* (2021) 60 Cal.App.5th 798; but see *People v. Garcia* (2020) 57 Cal.App.5th 100, 116, rev. granted, Feb. 10, 2021, S265692.)

If the court concludes that the petitioner has made a prima facie showing, it must issue an order to show cause. (§ 1170.95, subd. (c); *Verdugo, supra,* 44 Cal.App.5th at p. 328.) "Once the order to show

9

cause issues, the court must hold a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts." (*Verdugo, supra*, 44 Cal.App.5th at p. 327, citing § 1170.95, subd. (d)(1).) At the order to show cause hearing, the parties may rely on the record of conviction or present new or additional evidence to support their positions. (§ 1170.95, subd. (d)(3).)

2. *Analysis*

Here, the parties agree that the trial court erred by weighing the facts of appellant's record of conviction to determine whether he made a prima facie case for relief. As observed by the Attorney General, "there is no indication in the record that appellant was ineligible for relief *as a matter of law*." (See *Drayton, supra*, 47 Cal.App.5th at p. 980 [authority to make determinations of ineligibility under § 1170.95, subd. (c) "is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime"].)

We agree with the parties, and we reverse the order summarily denying the petition. On remand, the court is directed to issue an order to show cause and proceed consistent with subdivision (d) of section 1170.95. We express no opinion as to the merits of appellant's petition, or on his alternative contentions with respect to whether the People should be barred from litigating major participation and reckless

indifference under the new law (§§ 188, subd. (a)(3), 189, subd. (e)(3)). Those arguments should be raised, if appellant so chooses, in the first instance at the order to show cause hearing.

## DISPOSITION

The judgment is reversed.  The matter is remanded with directions to issue an order to show cause and proceed consistent with section 1170.95, subdivision (d).

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, Acting P. J.

We concur:


COLLINS, J.


CURREY, J.

11